IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FIDEL ANGEL VASQUEZ          )
GONZALEZ,                    )
    Petitioner,           )
                             )
                             )   Case No. 1:13-cv-1230
      v.                 )
                             )
ALEJANDRO MAYORKAS, *et al.*, )
    Respondents.          )

## MEMORANDUM OPINION

At issue on a threshold motion to dismiss petitioner Fidel Angel Vasquez Gonzalez's petition for writ of mandamus for lack of subject matter jurisdiction is whether the district court has jurisdiction to compel the United States Citizenship and Immigration Services ("USCIS") or the Attorney General to adjudicate his Form I-485 Application to Register Permanent Residence or Adjust Status ("adjustment application").[1] Respondents argue that (i) there is no jurisdiction on mootness grounds because USCIS is without power or authority to adjudicate petitioner's adjustment application as it is bound by a 2010 Board of Immigration Appeals ("BIA") decision ordering petitioner's removal as an alien who entered the United States without inspection, and (ii) there is no mandamus jurisdiction as the Attorney General has no mandatory, nondiscretionary duty to adjudicate plaintiff's adjustment application.[2] In response, petitioner

---

[1] Respondents moved, in the alternative, to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. Because the subject matter jurisdiction issue is dispositive, respondents' Rule 12(b)(6) arguments are neither reached nor decided.

[2] Respondents also argue that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1 *et. seq.*, bars district courts from exercising jurisdiction in these circumstances. Because the other grounds for dismissal are dispositive, respondents' jurisdiction stripping argument is neither reached nor decided.

claims that he is properly classified as an arriving alien paroled into the United States, and as such, USCIS has the exclusive jurisdiction and duty to adjudicate his adjustment application.[3]

For the reasons that follow, the motion to dismiss must be granted. The claim against USCIS is moot, as that agency is without authority to adjudicate plaintiff's adjustment application given that the BIA has ruled that petitioner is subject to removal as an alien who entered the United States without inspection, and USCIS is bound by this ruling. In addition, there is no mandamus jurisdiction with respect to the claim against the Attorney General because although the Attorney General has the power to adjudicate petitioner's adjustment application, this power is purely discretionary.

## I.

Petitioner Fidel Angel Vasquez Gonzalez, a citizen of El Salvador and current Virginia resident, has resided in the United States since 1984. Since then, he has been involved in a series of immigration proceedings. Petitioner brought this petition for a writ of mandamus against respondents (i) Alejandro Mayorkas, Director of USCIS; (ii) Kimberly Zannotti, USCIS Washington Field Office Director; (iii) Jeh Johnson, Secretary of the Department of Homeland Security, and (iv) Eric Holder, Attorney General (referred to collectively herein as "respondents"). Petitioner seeks to compel respondents to adjudicate his pending I-485 adjustment application.

The following chronological statement of facts serves to frame the parties' dispute:

---

[3] Petitioner's petition for a writ of mandamus includes two counts: (I) mandamus relief, and (II) emergency stay of removal. As noted *infra*, in light of the pending litigation and at petitioner's request for mandamus relief, United States Immigration and Customs Enforcement ("ICE") has stayed petitioner's removal proceedings "for a period of one year or until the case before the Federal Court is closed." *Vasquez Gonzalez v. Mayorkas*, 1:13-cv-1230 (E.D. Va., Nov. 14, 2013) (Resp't's Br. Ex. 22). Petitioner concedes that, as a result of this ICE determination, Count II of his petition is moot. Thus, Count II is dismissed as moot.

| | |
|---|---|
| Aug. 14, 1984 | Petitioner entered the United States without inspection. |
| June 6, 1988 | Petitioner filed an application for asylum. |
| Dec. 22, 1988 | While petitioner's asylum application was pending, the former Immigration and Naturalization Service ("INS") filed an Order to Show Cause against petitioner charging him with the August 14, 1984 entry without inspection. |
| July 27, 1989 | Following a hearing, the Immigration Court denied petitioner's application for asylum and allowed petitioner the option of voluntarily departing the United States by August 27, 1989. If petitioner did not voluntarily depart by that date, he would be ordered deported. |
| Aug. 7, 1989 | Petitioner timely appealed the Immigration Court's July 27, 1989 Order to the BIA. |
| 1991 | While petitioner's appeal was pending before the BIA, petitioner filed form I-821 to apply for Temporary Protected Status ("TPS"). Petitioner was eventually granted TPS status on an unknown date. |
| Jan. 14, 1991 | Given petitioner's eligibility to apply for TPS status, the BIA administratively closed petitioner's appeal of the Immigration Court's July 27, 1989 Order without decision to allow petitioner to apply for TPS status. |
| July 1991 | As a result of his eligibility for TPS status, petitioner was able to obtain advance parole to return to El Salvador to visit his sick father. |
| Aug. 11, 1991 | Petitioner returned to the United States from El Salvador, at which point he was paroled into the country. |
| Oct. 4, 1995 | Petitioner filed a second application for asylum. |
| April 2000 | Because of his pending asylum claim, petitioner became eligible for special cancellation of removal under Section 203 of the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA). Petition applied for this benefit, which was available to nationals of certain specified countries, including El Salvador. |
| Jan. 17, 2001 | The INS interviewed petitioner concerning his NACARA application. |
| Jan. 19, 2001 | The INS denied petitioner's NACARA application due to his former positions in the military and law enforcement in El Salvador. |

| | |
|---|---|
| Dec. 4, 2002 | The INS referred petitioner to the Immigration Court for removal proceedings via a Notice to Appear ("NTA"). The NTA charged petitioner with inadmissibility pursuant to INA § 212(a)(6)(A)(i) on the ground that petitioner was present in the United States without having been admitted or paroled (*i.e.*, on the basis of his August 14, 1984 entry without inspection). |
| Feb. 19, 2003 | A Master Calendar hearing was held before the Immigration Court, during the course of which petitioner, through counsel, conceded his removability under INA § 212(a)(6)(A)(i), as charged in the December 4, 2002 NTA. At the same hearing, petitioner renewed his NACARA application, thus effectively staying his removal. |
| Feb. 11, 2005 | The Immigration Court heard testimony from petitioner and an asylum officer regarding petitioner's renewed NACARA application. |
| Unknown date | At some point after the February 11, 2005 hearing, the parties realized that the Immigration Court lacked jurisdiction over the December 4, 2002 charge given the BIA's 1991 administrative closure of petitioner's earlier removal and asylum proceedings. |
| May 2005 | The parties jointly filed a motion with the BIA to reopen petitioner's earlier removal and asylum proceedings and to remand the matter to the Immigration Court for consideration of petitioner's renewed NACARA application. |
| July 19, 2005 | The BIA granted the parties' May 2005 joint motion, and the case was re-opened. |
| Oct. 29, 2008 | The parties agreed to accept, *nunc pro tunc*, the testimony previously presented to the Immigration Court on February 11, 2005, despite the court's lack of jurisdiction when the testimony was taken. |
| Dec. 18, 2008 | The Immigration Court ordered petitioner's removal on the basis of the December 4, 2002 charge for entry without inspection, citing inconsistencies between his 2001 and 2005 descriptions of his law enforcement duties in El Salvador. The Immigration Court also considered, and rejected on discretionary grounds, petitioner's renewed NACARA application. Petitioner timely appealed the Immigration Court's December 18, 2008 decision to the BIA. |
| Oct. 15, 2010 | The BIA dismissed petitioner's appeal, thereby affirming the Immigration Court's December 18, 2008 final order of removal. Yet, ICE could not immediately enforce this final order of removal as a result of petitioner's continued TPS status. |

| | |
|---|---|
| Dec. 15, 2010 | USCIS revoked petitioner's continued TPS status, citing his prior positions in the military and in law enforcement in El Salvador. |
| Jan. 14, 2011 | Petitioner filed a motion for reconsideration of the December 15, 2010 decision to withdraw his TPS. |
| July 11, 2011 | Petitioner's son, Fredy Arnoldo Vasquez Flores—who had become a naturalized citizen on March 2, 2010—filed Form I-130, Petition for an Alien Relative, on petitioner's behalf. |
| Sept. 6, 2011 | USCIS denied petitioner's motion for reconsideration of USCIS's December 15, 2010 decision revoking petitioner's continued TPS. |
| Sept. 12, 2011 | Petitioner filed a timely appeal of the USCIS decision to withdraw his TPS with the USCIS Administrative Appeals Office ("AAO"). This appeal continued to protect petitioner from removal under 8 C.F.R. § 214.14(b)(3). |
| Jan. 12, 2012 | USCIS approved the Form I-130, Petition for an Alien Relative, filed by petitioner's son on petitioner's behalf. |
| March/April 2012 | Based on the I-130 approval, petitioner filed with USCIS the Form I-485 Application to Register Permanent Residence or Adjust Status that is the subject of the instant action. |
| June 21, 2013 | The USCIS AAO denied petitioner's appeal of USCIS's December 15, 2010 decision revoking petitioner's continued TPS status. |
| Aug. 27, 2013 | Petitioner appeared for his I-485 application interview with USCIS. At that interview, an ICE agent informed petitioner that USCIS had decided to close petitioner's I-485 adjustment application administratively for lack of jurisdiction to adjudicate the application. No administrative appeal is available from this decision. The ICE agent informed petitioner that he needed to effectuate his own removal. |
| Aug. 30, 2013 | Petitioner received a letter, dated August 27, 2013, from USCIS informing him that his application had been closed due to the BIA's 2010 order of removal. |
| Oct. 3, 2013 | Petitioner filed this suit seeking a writ of mandamus compelling USCIS to adjudicate his I-485 adjustment application, as well as a stay of his removal. |
| Oct. 24, 2013 | In light of the pending litigation and at petitioner's request, ICE stayed petitioner's removal proceedings "for a period of one year or until the case before the Federal Court is closed." |

## II.

Two sets of legal principles and rules govern the resolution of this dispute: (i) the principles and rules of federal jurisdiction, and (ii) the principles and rules of substantive immigration law. Each set is briefly summarized here and then applied to the facts of this case in Part III.

### A.

In a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the petitioner has the burden of establishing jurisdiction by a preponderance of the evidence. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). When considering a motion to dismiss for lack of subject matter jurisdiction, "the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings." *Id.* at 348. If a district court finds that there is no subject matter jurisdiction, the complaint must be dismissed in its entirety. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Furthermore, it is well-settled that federal courts may only adjudicate cases or controversies under Article III of the Constitution. *See Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) ("One of the bulwark principles of constitutional law is the 'cases' or 'controversies' requirement for justiciability referred to in Article III."). To that end, "[t]he Supreme Court has developed a number of constitutional justiciability doctrines from the text of Article III, Section 2, including the prohibition against advisory opinions, the political question doctrine, and the doctrines of standing, ripeness, and mootness" in order to preserve the constitutionally mandated separation of powers, conserve judicial resources, improve judicial decisionmaking by requiring concrete controversies, and promote fairness by generally prohibiting the adjudication of the rights of parties not before a court. *United States v. McClure*, 241 Fed. Appx. 105, 107 (4th Cir.

2007). Consistent with these general principles, the mootness doctrine requires that a claimant suffer an injury-in-fact or continuing collateral consequence that is fairly traceable to the challenged action or decision, and that a favorable decision would be likely to redress the injury. *See Townes v. Jarvis*, 577 F.3d 543, 554 (4th Cir. 2009). In sum, where a favorable decision by the court would not redress a claimant's injury, then a case is moot and there is no jurisdiction. Although not directly on point, two cases are illustrative of mootness as applied to the administrative closure of adjustment applications by USCIS. In *Akinmulero v. Holder*, the Fifth Circuit affirmed the district court's determination that an alien's petition for a writ of mandamus ordering USCIS to adjudicate his adjustment application was moot following administrative closure. 347 Fed. Appx. 58, 60-61 (5th Cir. 2009). Similarly, in *Mohammed v. Holder*, this district held that an alien's petition for writ of mandamus to compel USCIS to adjudicate her adjustment application was moot because USCIS lacked jurisdiction over the application. 695 F. Supp. 2d 284, 285 (E.D. Va. 2010).

In addition, the federal mandamus statute provides that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Importantly, a writ of mandamus is only proper where three elements co-exist: "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988). Put differently, there is no jurisdiction to issue a writ of mandamus to compel the performance of a discretionary duty. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The common-law writ of mandamus, as

codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty.").

## B.

The following principles of substantive immigration law govern the determination of whether this petition presents a justiciable case or controversy. The INA provides for three categories of aliens present in the United States: (i) admitted aliens, (ii) aliens paroled into the United States, and (iii) aliens who entered without inspection (*i.e.* illegally). The first—admitted aliens—are defined as aliens who have "lawful[ly] ent[ered] . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The second category—paroled aliens—is comprised of aliens who have been permitted to enter the United States physically without having been legally admitted. *See* 8 U.S.C. § 1182(d)(F)(A) ("[P]arole of such alien shall not be regarded as an admission of the alien[.]"). It is settled that "[t]he purpose of parole is to permit a non-citizen to enter the United States temporarily while investigation of eligibility for admission takes place." *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005). A paroled alien is considered to be an "arriving alien," defined in the pertinent regulation as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Lastly, the third category consists of aliens who enter without inspection and are thus inadmissible. In this regard, the INA provides that, "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

In addition to defining the legal categories of aliens in the United States, the INA also provides a mechanism through which an alien may seek to have her status adjusted to that of a

permanent resident.  *See* 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ."). The authority to adjust the status of aliens to permanent residents in most cases rests with USCIS, via delegation from the Secretary of Homeland Security.[4] But importantly, the Attorney General (via delegation to the Immigration Court and the BIA), has jurisdiction to adjudicate adjustment applications of aliens in removal proceedings who are *not* classified as arriving aliens.[5] Those aliens in removal proceedings who *are* classified as arriving aliens must have their adjustment applications adjudicated by USCIS.[6]

With regard to the division of authority between the Attorney General and the Secretary of Homeland Security, the INA further provides that although "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, . . . determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). This means that when the Attorney General (via delegation to the Immigration Court and the BIA) makes a legal determination regarding the status of an alien, the Secretary of Homeland Security, and its delegate USCIS, are bound by that determination.

---

[4] *See* 8 C.F.R. § 245.2(a)(1) ("USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1).").

[5] *See* 8 C.F.R. § 1245.2(a)(1)(i) ("In the case of any alien who has been placed in deportation proceedings or in removal proceedings (*other than as an arriving alien*), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.") (emphasis added).

[6] *See* 8 C.F.R. § 1245.2(a)(1)(ii) ("In the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien . . . .").

Thus, to recapitulate, federal regulations make clear that the Attorney General (via delegation to the Immigration Court and the BIA) has jurisdiction over adjustment applications of aliens in removal proceedings *unless* such an alien is also considered to be an arriving alien. In the case of an arriving alien in deportation proceedings, the Secretary of Homeland Security (via delegation to USCIS) has authority to adjudicate any adjustment application.   But importantly, once the Attorney General has made a legal determination regarding an alien's legal status, the Secretary of Homeland Security, and its delegate USCIS, are bound by that determination.

This petition for a writ of mandamus therefore presents two questions.  The first question presented is whether petitioner is an arriving alien, as he claims to be, in which event USCIS has a duty to adjudicate his adjustment application, or whether petitioner is an alien who entered without inspection, as respondents contend, in which case USCIS has no jurisdiction to adjudicate his adjustment application.  If the latter is true, this petition for a writ of mandamus is moot with respect to the three respondents who represent USCIS.  The second question presented is whether there is mandamus jurisdiction with respect to the Attorney General.

### III.

### A.

The undisputed factual record reflects that petitioner entered the United States without inspection, *i.e.*, illegally, in 1984, and has spent the past 30 years seeking—essentially unsuccessfully (except that he is still here)—to avoid removal to El Salvador, his country of origin.  The record also reflects that petitioner's efforts to gain asylum and relief from removal under NACARA failed, and that in December 2008, the Immigration Court ordered petitioner's removal on the basis of a charge that petitioner entered the United States without inspection in

1984,[7] a charge petitioner conceded in open court.[8]  The Immigration Court in December 2008 also rejected petitioner's renewed NACARA application, citing inconsistencies in petitioner's testimony and petitioner's former positions in the military and law enforcement in El Salvador. Thereafter, in 2010, the BIA affirmed the Immigration Court's 2008 order of removal, thereby also affirming the Immigration Court's finding that petitioner entered the United States without inspection and is therefore inadmissible.[9]  *Vasquez Gonzalez v. Mayorkas*, 1:13-cv-1230 (E.D. Va., Nov. 14, 2013) (Resp't's Br. Ex. 13 at *1).

   In sum, therefore, the undisputed record makes clear that petitioner has been found by the Immigration Court and the BIA to have entered this country without inspection in 1984, to be inadmissible, and to be subject to an order of removal.  USCIS is bound by this ruling by the Immigration Court and the BIA (both delegates of the Attorney General); it cannot ignore or alter this ruling in any way, and the effect of the ruling is to deprive USCIS of any power or authority to adjudicate petitioner's adjustment application.  *See* 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 1245.2(a)(1)(i)-(ii).  Thus, any claim for mandamus relief directed at USCIS is moot and subject to dismissal on this ground.  *See Townes,* 577 F.3d at 554 (enumerating factors making claim moot).

---

[7] *Vasquez Gonzalez v. Mayorkas*, 1:13-cv-1230 (E.D. Va., Nov. 14, 2013) (Resp't's Br. Ex. 12 at *1). Specifically, the Immigration Judge found petitioner to be inadmissible as an " alien present in the United States without being admitted or paroled" pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

[8] *Vasquez Gonzalez v. Mayorkas*, 1:13-cv-1230 (E.D. Va., Nov. 14, 2013) (Resp't's Br. Ex. 9 at *2).

[9] Petitioner was not thereafter immediately removed as he had earlier—in 1991—been granted TPS. In December 2010, USCIS revoked petitioner's TPS, again noting his prior military and law enforcement positions in El Salvador.

Seeking to avoid this result, petitioner advances several arguments. First, petitioner points out, correctly, that USCIS made a legal error in administratively closing his adjustment application by citing in USCIS's August 27, 2013 letter to petitioner, as its sole legal authority in support of the decision to close petitioner's adjustment application, a regulation that was repealed seven years prior.[10] USCIS's error in this regard is lamentable and bespeaks an unfortunate lack of rigor or care in the performance of its important duties. Nonetheless, the error has no legal effect here and does not alter the fact that the Immigration Court's order and the BIA's affirmance of that order is binding on USCIS, and as a result, USCIS is without authority or power to adjudicate petitioner's application for adjustment.

Next, petitioner argues that he is properly categorized as an "arriving alien" because he was paroled into the United States in 1991. In making this argument, petitioner relies on 8 C.F.R. § 1001.1(q), which provides that, "(a)n arriving alien remains an arriving alien even . . . after . . . parole is terminated or revoked." This argument also fails. Petitioner was paroled into the United States by virtue of his eligibility for TPS, but this grant of advance parole did not

---

[10] Specifically, the August 27, 2013 letter provides, in pertinent part:

Title 8 Code of the Federal Regulation [sic], Part 245.2(a)(1) states that:

After an alien is in deportation or removal proceeding [sic], his or her application for adjustment of status shall be considered only in those proceedings.

Since the immigration court has sole jurisdiction over your case, your Application to Register Permanent Residence or Adjust Status is hereby administratively closed. No further action will be taken on the application.

*Vasquez Gonzalez v. Mayorkas*, 1:13-cv-1230 (E.D. Va., Nov. 14, 2013) (Resp't's Br. Ex. 21).

The language cited by USCIS was repealed on May 12, 2006. *See* Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status and Jurisdiction To Adjudicate Applications for Adjustment of Status, 71 FR 27585 (May 12, 2006).

erase the fact that he had entered without inspection in 1984. And indeed, when petitioner's TPS was revoked in 2010, the fact that he entered illegally in 1984 controlled his status. Similarly, petitioner's argument that his claimed "arriving alien" status is not inconsistent with the Immigration Court's determination that entered without inspection also fails. The category of aliens who entered without inspection and the category of arriving aliens are mutually exclusive; an alien cannot be both inadmissible as having entered without inspection and at the same time an arriving alien. Nor is this conclusion altered by the fact that petitioner was at one time granted TPS and paroled into the United States after a 1991 visit to El Salvador. The grant of parole does not erase petitioner's original entry without inspection, nor does it convert his status to that of an arriving alien. TPS is just that—temporary. And, when petitioner's TPS was revoked in 2010, the temporary stay of his removal was lifted, and petitioner's status reverted that of an alien who entered without inspection and was therefore deemed inadmissible.

In sum, the controlling fact in this dispute is that the Immigration Court ruled and the BIA affirmed that petitioner entered without inspection and is inadmissible, and this ruling, which is binding on USCIS, deprives USCIS of any power or authority to adjudicate petitioner's adjustment application. Petitioner's arguments to the contrary are unavailing, and the scant analogous authority that exists plainly supports the conclusion that this matter must be dismissed on jurisdictional grounds.[11]

---

[11] *See Akinmulero*, 347 Fed. Appx. at 60-61 (affirming district court's determination that alien's petition for writ of mandamus ordering USCIS to adjudicate adjustment was moot following administrative closure); *Mohammed*, 695 F. Supp. 2d at 285 (holding alien's petition for writ of mandamus to compel USCIS to adjudicate adjustment application moot because USCIS lacked jurisdiction over the application).

**B.**

Although USCIS is without authority to adjudicate petitioner's adjustment application, the Attorney General (via delegation to the Immigration Courts and the BIA) has the discretion to do so. Yet, the existence of the Attorney General's authority to adjudicate petitioner's adjustment application is of no avail to petitioner because the Attorney General's power in this regard is discretionary. *See* 8 U.S.C. § 1255(a); *Elkins v. Moreno*, 435 U.S. 647, 667 (1978) (noting that "adjustment of status is a matter of grace, not right"). And it is settled beyond dispute that mandamus will not lie to compel a government official to exercise a discretionary duty. *See Heckler*, 466 U.S. at 616 ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty."). Accordingly, there is no jurisdiction to grant mandamus with respect to the Attorney General in this case.

**IV.**

In sum, the petition for a writ of mandamus ordering USCIS to adjudicate petitioner's adjustment application is moot because USCIS has already administratively closed and dismissed his application consistent with its lack of jurisdiction, due to petitioner's status as an alien in removal proceedings who is *not* considered an arriving alien. In addition, there is no mandamus jurisdiction because the Attorney General has no mandatory, nondiscretionary duty to adjudicate petitioner's adjustment application. Accordingly, the petition for a writ of mandamus must be dismissed for lack of subject matter jurisdiction.

An appropriate order will issue.

Alexandria, VA
February 12, 2014

_____
/s/
T. S. Ellis, III
United States District Judge

- 14 -